## Lowe Application

Before Carson, P. J., Cummins and Weiner, JJ.

*McCreight, Marriner & McCreight,* for applicant.

*Paul N. Barna* and *Paul A. Simmons,* for protestants.

CARSON, P. J., February 2, 1962.—This case arises from an application by Ralph C. Lowe, filed June 16, 1959, for a private detective license, under the provision of the Private Detective Act of August 21, 1953, P. L. 1273 (22 PS §12 et seq.). Upon the presentation of the application in open court on June 16, 1959, Paul N. Barna, Esq., and Paul Simmons, Esq. and others of the Washington County Bar, appeared and objected to the granting of the license.

The court permitted the objecting parties to file their objections and Washington County Bar Association to present any objections it might have to the granting of the license. The Bar Association, at its regular meeting of September 21, 1959, passed a resolution declining to object to the application. Written objections to the application have been filed by Paul A. Simmons, Esq., and Clyde A. Tempest, Esq., on October 5, 1959. Testimony was taken October 5, October 22, and October 28, 1959, after which the matter was placed on the argument list and argued.

This court is of the opinion, after hearing the testimony and the arguments in the case that the application presented herein should be denied for two reasons:

First, that the applicant is not qualified under the Act of 1953 as amended, 22 PS §14 (pocket parts) re-

quiring that he must have ". . . been regularly employed as a detective, or shall have been a member of the United States Government investigation service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of a patrolman, for a period of not less that three years . . . " Applicant's work as insurance adjuster does not qualify him as a matter of fact, nor as a matter of law under the section of the act setting forth qualifications. Reading the act as a whole, it discloses that insurance adjusters are not detectives. Section 2 of the act defining private detective business, after enumerating matters encompassed within the meaning of the term, provides:

" . . . The foregoing shall not be deemed to include persons engaged in the business of investigators for or adjusters for insurance companies . . ."

If the definition of private detective business, as provided in the act, does not include adjusters or investigators for insurance companies, this court cannot supply the deficiency and adjusters cannot be considered to have the required qualification as having "been regularly employed as a detective" within the meaning of section 4 of the act as amended April 30, 1957, P. L. 98, sec. 1, dealing with application for licenses.

Second, the legislature has declared the public policy concerning the licensing of detectives by the act. There is inherent in the act the duty of the licensing body to use great care in granting such licenses. The licensing of insurance adjusters as detectives is contrary to the meaning and wording and intent of Private Detective Act of 1953, P. L. 1273, as amended. This court must declare public policy as expressed by the legislature of using great care in granting private detective licenses.

We are in accord with the opinion of P. J. Henninger, of Lehigh County, in construing this same act,

when he said in the case of Gardner Application, 6 D. & C. 2d, pages 742, 743, 744, 745 and 746:

"He is a young man 32 years of age, bears an excellent reputation and would be fully qualified in every respect for receipt of a license, had he been regularly employed either as a detective, as a member of the United States Government investigative service, as a sheriff or as a member of a city police department of a rank or grade higher than that of patrolman, for a period of not less that three years . . .

" . . . The act has all the vices of any act passed to entrench a certain group of people in their profession and to make it difficult for others to break through the barriers, but it does express the will of the General Assembly and must be interpreted to carry out its expressed purpose . . .

" . . . We are convinced that the 'regular employment as a detective' was intended to freeze in their business those who had theretofore been licensed as private detectives, but who might not possess the necessary qualifications under the new act. We are not now deciding whether agents as opposed to detectives can qualify if regularly so employed for three years. Under similar language of New York's law upon the same subject, it seems that the courts have held that investigative work similar to that of a detective could qualify a person to receive a private detective license: Norwood v. Ward, 46 F. 2d 312.

"Whether or not regular employment in investigative work would render a person competent, it is clear that merely patrolling games does not. To hold that it did, would work a repugnancy with the provision that qualifying police experience must be in the rank above that of a patrolman . . .

" . . . It has always been the policy of this court to hold the number of detective licenses to a minimum. Now the legislature has adopted the same policy, leav-

ing to the courts only the question of compliance with legislative requirements. We shall grant licenses, as we are bound to do, when these requirements are met, but we do not intend to interpret the act so loosely as to nullify its intent."

To emphasize what was said by Judge Henninger, it is noted under section 2(c) of the act the term investigator shall:

" . . . mean and include any person . . . engaged in the private detective business, as defined in subsections . . . (b) . . . "

This act thus protects the professional group from the admission of any, except those expressly named by the general assembly in this act. The court is, therefore, powerless to either grant licenses to those not named in the act or to prevent those who are named from being licensed.

For the reasons set forth herein, the following is issued:

### Order

And now, February 2, 1962, it is hereby ordered that the application of Ralph C. Lowe for private detective license, at the above number and term, is denied.

### Dissenting Opinion

CUMMINS, J., February 23, 1962.—This case arises from the application filed by Ralph C. Lowe in the Court of Quarter Sessions of Washington County on June 1, 1959, for a private detective license under the provisions of the Private Detective Act of 1953. After due notice, the application, accompanied by the certificates and exhibits required by law, came before the court for hearing on June 16, 1959, at which time Paul N. Barna, Esq., and Paul Simmons, Esq., of the Washington County Bar, among others, orally objected to the granting of the license.

The hearing was then continued by the court in order that the objections might be filed according to law and in order that the Washington County Bar Association might have an opportunity to meet and consider the matter. Accordingly, the bar association having acted favorably upon the application at its regular meeting of September 21, 1959, and Paul A. Simmons, Esq., and Clyde G. Tempest, Esq., having filed a written statement of objections on October 5, 1959, the matter came on for hearing by the court on October 5, 1959, and testimony was taken on October 5, October 22, and October 28, 1959. After the testimony had been transcribed, the matter was placed at argument by the attorneys for applicant.

This application for private detective license under the Private Detective Act of 1953 comes before the court with the approval of the Washington County Bar Association and the endorsement of several leading members of the bar, representing nearly every type of practice, whose certificates of approval are attached to the application. Applicant has for the past 19 years been a full-time adjuster of insurance claims in Washington County, carrying out the investigative duties which are necessarily involved in that occupation. He is well known to nearly every member of the bar of Washington County, for the duties of his occupation have brought him into frequent and sometimes adversary contact with attorneys.

The issue before the court is whether the applicant possesses the statutory qualifications of "good character, competency and integrity" required of a private detective under the Act of 1953. This issue is involved, of course, in every application for private detective license. In the present case, the issue has been further defined and narrowed by the verified statement of objections filed by Paul A. Simmons, Esq., and Clyde G. Tempest, Esq., of the Washington County Bar, whose

views have been ably presented and appear to be shared by Paul N. Barna, Esq., of the Washington County Bar. These objections are as follows:

"1. The applicant, Ralph C. Lowe, does not possess the requirements set forth in the Act of 1953 (22 P. S. 14A) as he has not "been regularly employed as a detective or shall have been a member of the United States Governmental Investigative Service, a Sheriff, a member of the Pennsylvania State Police, or a member of a City police department of a rank or grade higher than that of a patrolman for a period of not less that three years.

"2. That the conditions in Washington County have not changed since October 24, 1955 when the Court of Quarter Sessions of Washington County decided and held that there is no necessity for an additional license for a private detective business in Washington County.

"3. It is feared that the granting of any additional detective licenses in Washington County may lead to such abuses as to overshadow any benefits that the general public could realize.

"4. It is believed, from statements made by the applicant, that he will not devote much time to the private detective business and that his services will only be available to a very limited class of persons in Washington County and not to the public in general and that he does not intend to operate a full time private detective business.

"5. It is believed that the applicant does not intend to engage in making investigations in all eleven classifications set forth in the Act of Assembly."

It is important to point out at the outset that *not one* of the objections filed by the protestants challenges the character or integrity of the applicant, nor were Mr. Lowe's character and integrity challenged at the hearing. In answer to a direct question asked by Judge

Cummins, Mr. Barna stated that the protestants are satisfied about the integrity of the applicant, and in his testimony Mr. Simmons, who had questioned Mr. Lowe's discretion in referring a subrogation case to Mr. Simmons during the pendency of the application, nevertheless made it clear that he is not attacking Mr. Lowe's personal integrity. It also appears from the testimony that the district attorney's office had made a personal investigation of the applicant and found no personal objection.

Therefore, Mr. Lowe's good character and integrity, affirmatively shown in the certificates of approval attached to the application and in the testimony, are not issues in this case.

The Private Detective Act of 1953 also requires that the court be satisfied as to the "competency" of the applicant. While the word "competency" is not defined in the act, the context implies that the word is to be understood in its general sense of "fitness" or "ability" as well as in its narrower legal sense of "legally qualified to act."

Mr. Lowe's general fitness by training, temperament, and experience for the work of private detective amply appears in the application itself, in the certificates attached to the application and in the testimony. As an insurance claim adjuster, he has for approximately 19 years been regularly employed in the business of making investigations for the purpose of obtaining information with reference to the credibility of witnesses, the whereabouts of missing persons, the causes and origins of or responsibility for losses, accidents, damage and injuries to real and personal property and to persons, and the securing of evidence to be used before boards of arbitration and in the trial of civil cases—fields of investigation which are stated in the act to be private detective business.

Mr. Lowe's general fitness has not been challenged

by the protestants, although he was subjected to thorough cross-examination on his experience and methods of work. The protestants have objected, however, that Mr. Lowe is not *legally* qualified to be licensed because he has not "been regularly employed as a detective" and has not "been a member of the United States government investigation service, a sheriff, a member of the Pennsylvania State Police, or a member of a city police department of a rank or grade higher than that of patrolman for a period of not less than three years," as required by the Act of 1953.

For 19 years, applicant has, as an insurance claim adjuster, been regularly conducting precisely the sort of investigations which the Act of 1953 defines as "private detective business." Therefore, in the broad sense in which that term is used in the act, the applicant *has* been regularly employed as a detective for more than the statutory period.

If this "experience" requirement of the Act of 1953 were construed narrowly, it might unconstitutionally limit the classes of persons privileged to engage in the busines of private detective. The New York statute, as long ago as 1919, contained a similar "experience" requirement. An applicant was required to establish that "he has been regularly employed as a detective or shall have been a member of the United States government secret service, a sheriff or member of a city police department of a rank or grade higher than that of patrolman, for a period of not less than three years": Article 7 of the General Business Law of the State of New York as quoted in Norwood v. Ward, 46 F. 2d 312 (D. C. S. D. N. Y., 1930). In the Norwood case, the court pointed out in an opinion subsequently affirmed per curiam by the Supreme Court of the United States that, read literally, the quoted portion of the act might be unconstitutional, but that the New York attorney general had ruled that the word " 'detective' is to be

construed broadly so as to include at least all experience in work which can be considered the supplying of 'information as to personal character'; i. e., the type of experience that will qualify is at least coextensive with the type of work for which a license may be required . . .": Norwood v. Bennett, affirmed 283 U. S. 800, 75 L. Ed. 1422.

The rest of the objections filed by protestants raise questions, not of the character or integrity or competency of the applicant, but of public policy. It is objected that there is no necessity for an additional private detective in Washington County at this time and that the granting of additional detective licenses may lead to abuses. It is also objected that applicant, if licensed, may not be available at all times to everyone for all kinds of detective work.

The questions of public policy involved in the licensing of private detective have been decided by the legislature in the Act of 1953, and are no longer matters to be decided by the courts, as they were under the Act of 1887: Gardner Application, 6 D. & C. 2d 742. Under the mandatory language of the Act of 1953, if an applicant presents satisfactory evidence of good character, competency and integrity, "the court of quarter sessions *shall issue*" the license.

I disagree with those who say there is no need for an additional private detective for Washington County, and that the granting of an additional license may lead to abuses as far as the applicant is concerned.

Gomer H. Gibson, who now holds the only license in our county, let it be known that there is no need for another license and that he was opposed to Mr. Lowe's application. Since Mr. Gibson, according to his testimony, is out of the county a great deal of his time and since he has told this member of the court on numerous occasions when discussing his job that it took up most of his time, I feel that he is not qualified to testify as to the question of necessity for another license.

Mr. Quail, president of the minor judiciary and constable's association, for whom I have the highest regard, testified that he was more interested in seeing that if another license was granted, that this licensee would not take from the constables belonging to his association some of the work that they might be requested to do and this was his only objection.

The objection that the granting of another license may lead to abuses to me is not a very forceful argument and is one which merits no consideration as far as this applicant is concerned, because the legislature through the Private Detective Act recognized this possibility and therefore not only requires a license and a bond for one who engages in detective work, but requires proof of personal integrity and fitness before a license is granted, and the licensee is also subjected to the constant scrutiny and supervision of the district attorney's office. To deny this particular application for this reason, in my opinion, would be improper, and since the court en banc has indicated it does not question the integrity, character and reputation of the applicant, I do not see how we can deny this applicant his license on the ground that he might abuse his authority, if licensed.

The last two objections are to the effect that the applicant, if licensed, may not at all times be available to all people for all kinds of detective work. My answer to this argument is that it would be impossible for this applicant or any licensee to be available to all people for all kinds of detective work at all times. The Private Detective Act does not require this and I do not think this court should require it. Furthermore, I believe a licensee under the act is free to refuse certain types of employment and to limit his activities.

I refuse to accept the argument of those who object to this application, that Mr. Lowe's present work as an independent claim adjuster for insurance companies

would be incompatible with employment as a private detective. I don't think Mr. Lowe would permit this to happen, in view of the fact that no one, including this court, questions his integrity, and the badge of a detective as the legislature has said, carries with it a bond and strict supervision for the protection of the public and any aggrieved lawyer.

I am convinced that we have in Mr. Lowe an applicant who has presented satisfactory proof of his competency, qualifications, his integrity and character as required by the Private Detective Act of 1953 and I would grant him a license.

### Supplement to Dissenting Opinion

One of the principal questions involved in this case is whether the applicant's many years of experience as an insurance claim adjuster will satisfy the requirements of the Private Detective Act of 1953, that an applicant for a private detective license shall have *"been regularly employed as a detective* . . . for a period of not less than three years."

As the applicant has stated in paragraph 10 of his application, and as has been argued on pages 6-8 of the brief, the work which Mr. Lowe has been doing in the regular course of his employment as an insurance claim adjuster for more than ten years past is precisely the kind of work which section 2 (b) of the Private Detective Act, 22 PS §12 (b), has defined as "private detective business." Section 2 (b) includes 11 fields of investigative activity in its all-inclusive definition. Mr. Lowe has regularly worked in at least four of those fields, and his testimony shows occasional work in others.

Section 2 (b) does state, of course, that:

"The foregoing [list of investigative fields] shall not be deemed to include persons engaged in the business of investigators for or adjusters for insurance companies, nor persons in the exclusive employment of

common carriers subject to regulation by the interstate commerce commission or the Public Utility Commission of the Commonwealth of Pennsylvania, or investigators in the employment of credit bureaus."

This exception to the all-inclusive coverage of the act appears not only in section 2(b), but also in section 3(b), 22 PS §13(b), and, in somewhat different language, in section 15, 22 PS §25. The purpose of the exception is obviously to make it abundantly clear that the legislature did not intend to *require* that full-time insurance adjusters, or credit bureau investigators, or employes of common carriers, among others, be licensed as private detectives. It is simply an exception to the licensing requirement. The language of section 15, 22 PS §25, is clear on this point: "Nothing in this act shall apply . . . to any person *while* engaged in the business of adjuster for an insurance company . . ."

In other words, the effect of the above-quoted paragraph from section 2(b) of the Private Detective Act of 1953 is to state that, even though insurance adjusters do engage in the detective business as defined in the act, no license shall be required of them *while* they are working as insurance adjusters. Any stricter interpretation would conflict with the other provisions of the act and might create constitutional questions by unreasonably and illogically limiting the class of persons privileged to engage in a lawful occupation.